IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOREH J. BUCHANAN,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**SONY MUSIC ENTERTAINMENT, WARNER MUSIC GROUP, UNIVERSAL MUSIC GROUP, NBC UNIVERSAL PICTURES, AND SONY ATV MUSIC PUBLISHING,**<br><br>      **Defendants.** | **Case No. 1:18-cv-3028-(KBJ)** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANT UNIVERSAL PICTURES' MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ....................................................................................................... 1

PROCEDURAL HISTORY .......................................................................................................... 4

ARGUMENT ................................................................................................................................. 5

I.      BUCHANAN FAILS TO PLAUSIBLY PLEAD ANY CLAIM AGAINST UNIVERSAL PICTURES .................................................................................................. 7

     A.      Buchanan Has Not Pleaded Facts That Would Plausibly Show Universal Pictures Had Access to His Song ............................................................................ 7

     B.      Buchanan Does Not Identify Any Original Copyrighted Elements of His Work Purportedly Infringed By Universal Pictures ................................................ 8

     C.      This Case Should Be Dismissed With Prejudice Because It Is Frivolous And Amending Or Repleading Would Be Futile .................................................. 11

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmed v. Riaz*,
  No. 1:14-CV-02207, 2014 WL 7463860 (D.D.C. Dec. 19, 2014) ............................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................................5

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
  672 F.2d 607 (7th Cir. 1982) .....................................................................................................9

*Atkins v. Fischer*,
  331 F.3d 988 (D.C. Cir. 2003) ...................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................5, 8

*\*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ................................................................................................................6, 9

*Gaines v. Dist. Of Columbia*,
  961 F. Supp. 2d 218 (D.D.C. 2013) ...........................................................................................5

*Horsey v. U.S. Dep't of State*,
  170 F. Supp. 3d 256 (D.D.C. 2016) ...........................................................................................5

*Jones v. Horne*,
  634 F.3d 588 (D.C. Cir. 2011) .................................................................................................11

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016) .....................................................................................................8

*Maggio v. Wis. Ave. Psychiatric Ctr., Inc.*,
  795 F.3d 57 (D.C. Cir. 2015) .....................................................................................................2

*Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*,
  52 F.3d 373 (D.C. Cir. 1995) .....................................................................................................5

*Neitzke v. Williams*,
  490 U.S. 319 (1989) .................................................................................................................11

*\*Nichols v. Club for Growth Action*,
  235 F. Supp. 3d 289 (D.D.C. 2017) .......................................................................................1, 6

*Prunté v. Universal Music Grp.* (*Prunté I*),
    563 F. Supp. 2d 41 (D.D.C. 2008) ..................................................................................6

*\*Prunté v. Universal Music Grp., Inc.* (*"Prunté II"*),
    699 F. Supp. 2d 15 (D.D.C. 2010) ..............................................................................9, 10

*Richardson v. Cash Money Records, Inc.*,
    No. CIV.A. 12-0475 (EGS), 2012 WL 6055573 (D.D.C. Dec. 5, 2012) ....................11, 12

*Scott-Blanton v. Universal City Studios Prods. LLLP*,
    539 F. Supp. 2d 191 (D.D.C. 2008) ..................................................................................6

*\*Sturdza v. United Arab Emirates*,
    281 F.3d 1287 (D.C. Cir. 2002) ....................................................................................6, 9

*Tanksley v. Daniels*,
    902 F.3d 165 (3d Cir. 2018) ............................................................................................11

*Whitehead v. Paramount Pictures Corp.*,
    53 F. Supp. 2d 38 (D.D.C. 1999) ....................................................................................10

**Statutes & Other Authorities**

28 U.S.C.A. § 1915(e)(2)(B) ..................................................................................................11

Defendant Universal Pictures (erroneously sued as "NBC Universal Pictures" and referred to herein as "Universal Pictures") respectfully submits the following memorandum of points and authorities in support of its Motion to Dismiss:

## PRELIMINARY STATEMENT

In this meritless lawsuit, Plaintiff Moreh Buchanan claims that Universal Pictures' well-known *Fast & Furious* movie franchise was "stolen" from a rap song he recorded in 1994 and that an unidentified Atlanta attorney shopped to various record labels in 1997. He also asserts that dozens of hit songs in genres ranging from hip-hop to country infringed on that song and others he recorded in the early 1990s. Buchanan does not set forth what copyrightable elements of his works were copied by the movies and songs, and the exhibits to the Complaint show that what Buchanan considers copying is merely a collection of random alleged similarities. Neither does he plausibly explain how Universal Pictures gained access to an unpublished rap song when making the *Fast & Furious* films. Because Buchanan has not plausibly pleaded any claim and because amendment would not salvage this frivolous lawsuit, it should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

Buchanan describes himself as a "music creator, songwriter, music publisher, singer/rapper, artist . . . and music composer of recorded music." Compl. ¶ 3.

Buchanan's Complaint details events over more than thirty years. Very few of them have any connection to Universal Pictures, but we recite them here for completeness. Buchanan

---

[1] As the law requires, Universal Pictures assumes, for purposes of this motion only, the truth of all well-pleaded allegations in the Complaint. *See Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 293 (D.D.C. 2017) ("A court must treat the complaint's factual allegations as true, even if doubtful in fact." (internal marks and citation omitted)). By doing so, Universal Pictures does not waive and specifically reserves the right to dispute any of the Complaint's allegations should any part of this action survive this Motion.

1

alleges that, between 1987 and 1995, he wrote and recorded a number of rap songs in his hometown of St. Louis, Missouri. *Id.* ¶¶ 10-43. He persuaded a local radio station, KMJM, to play two of those songs on the air in 1991 and 1992. *Id.* ¶¶ 15-18, 31-33. Buchanan also made and sold cassette recordings of his music in the St. Louis area. *Id.* ¶¶ 35-37 & Ex. 7.

Buchanan repeatedly presented these "demo" recordings of his songs during the mid-1990s to an unnamed cousin in Atlanta who at the time owned a record label. *Id.* ¶¶ 22-28, 34, 40-49. One of them was a song Buchanan wrote and recorded in the spring of 1994 titled "I Gos Ta Roll" (the "Song"). *Id.* ¶ 38 & Ex. 9. The Song is a first-person narrative bragging about driving a fast car and "hooking up" with a sprinter he meets at a running track. *See* Ray Baby, *I Gos Ta Roll*, YOUTUBE (Nov. 5, 2015), https://www.youtube.com/watch?v=vJNPyvLLp-M.[2] In a letter to unnamed recording industry executives, Buchanan describes the Song as a fantasy in which he "envisioned myself as a playboy with a remarkable make believe automobile, while driving around my hometown having fun." *Id.* Ex. 10 at 3. Buchanan alleges that he registered a copyright in the Song in 1998 as part of a group of purportedly unpublished songs under the registration number Pau002319574. *Id.* ¶ 100 & Ex. 2.

Buchanan's cousin was not impressed by the Song and rebuffed Buchanan's pleas for a recording contract, disagreeing with Buchanan's opinion that "I Gos Ta Roll" "was a serious potential multi-million selling song." *Id.* ¶¶ 40-41. Buchanan became depressed at this rejection. *Id.* ¶ 40.

Although his cousin had spurned him and eventually shut down the independent record label in 1997, Buchanan continued his efforts to "make success happen with his music career."

---

[2] The Court may consider on a motion to dismiss the allegations of the complaint, its exhibits, and any documents incorporated into the complaint by reference. *Maggio v. Wis. Ave. Psychiatric Ctr., Inc.*, 795 F.3d 57, 62 (D.C. Cir. 2015). The Court therefore may consider this recording of "I Gos Ta Roll," which is repeatedly referenced in the Complaint. Buchanan also includes a screenshot of this You Tube page in Exhibit 9 to his Complaint.

*Id.* ¶¶ 48-50.  In the spring of 1997, Buchanan brought his demo tapes to an unnamed Atlanta attorney who had an office down the hall from his cousin.  *Id.* ¶¶ 55-58.  Buchanan alleges that, under an oral contract, the attorney "shopped" his recordings to various record labels in New York City.  *Id.* ¶ 59.  But the lawyer's assurances that a lucrative record deal was just around the corner never materialized, nor did a potential copyright infringement lawsuit.  *Id.* ¶¶ 60-89.  After five years of waiting, Buchanan says he realized that "the Atlanta lawyer had completely abandoned, duped and taken" him.  *Id.* ¶ 89.  By 2006, Buchanan had stopped recording music altogether.  *Id.* at 9.

During this time, Buchanan became convinced that Will Smith's 1997 smash hit "Gettin' Jiggy Wit It" was actually an infringing copy of one of Buchanan's demo songs, "Comin' Tight."  *Id.* ¶¶ 63-82.  That year, Buchanan complained in a fax to Smith's agent, and became enraged when Smith's attorneys responded with a letter saying they would "vigorously defend" any further attempts by Buchanan "to further tattle-tale his claims."  *Id.* ¶¶ 68-71.  Buchanan's legal response was remarkably slow in coming:  He does not allege that he filed any infringement lawsuit against Smith or anyone else before filing this action more than 21 years later.  Buchanan says that "around Christmas 2012," he had a "sudden revelation beamed upon his (Plaintiff) mind and he (Plaintiff) began to notice songs dating back to 1993" that infringed Buchanan's music.  *Id.* at 17.  Buchanan does not explain why he waited another six years after this revelation to file suit.

The Complaint alleges a wide-ranging and long-running scheme to infringe the Song and three other Buchanan demos.  *See* Compl. at 8-17.  The Complaint lists 57 singles or albums by artists prominent in hip-hop, pop, rock and country music that Buchanan claims infringed on one or more of his songs, including some 45 that he alleges infringe "I Gos Ta Roll."  *Id.* at 10-14.

Most relevant to this Motion, Buchanan alleges that the Song "was passed on and even accessed to Universal Pictures," where unnamed writers, producers and directors "fully exploited" it in making the *Fast & Furious* movie franchise. *Id.* at 15.  The Complaint does not say how the film infringes the Song, and unlike other claims he asserts, he does not identify any portion of the film's soundtrack that is purportedly infringing, suggesting that he is asserting that other elements of the film itself somehow infringe his purported rights in the Song.  The Complaint also does not describe how or in what form the Song was provided to Universal Pictures or to whom it was provided.  Nor does it identify which copyrightable element or elements of the Song were allegedly infringed by Universal Pictures.

This "superfluous spectacular spectacle of copyright infringement," Buchanan claims, is so egregious that "the world has not seen such a victim of horror, shame, poverty, desperation, fright and suffering since the ghettos of the Genocide [sic] of Nazi Germany and even on a level of the incarceration of South African President Nelson Mandela." *Id.* at 16-17.  In total, the Complaint seeks damages of "$1 Quadrillion." *Id.* at 17.

## PROCEDURAL HISTORY

Buchanan filed the Complaint in this action on December 19, 2018, *see* Dkt. 1, along with motions for leave to proceed *in forma pauperis*, Dkt. 2, and to appoint counsel, Dkt. 3.  He paid the filing fee on January 16, 2019, and this Court denied his motion to appoint counsel on February 5, 2019.  Dkt. 5.  On that date, the Court also entered an order requiring Buchanan to amend the case caption to reflect the entities he intended to sue and their addresses, Dkt. 6, with which he complied on March 4, 2019, Dkt. 7.

On March 21, 2019, Buchanan filed a series of affidavits of mailing stating that he sent copies of the summons and complaint to each defendant via certified mail three days earlier, on March 18.  Dkt. 8.  Counsel for Universal Pictures appeared on April 5, 2019, Dkt. 9, and moved

for an extension of time until May 2, 2019, to answer or otherwise respond to the Complaint, Dkt. 11. Buchanan consented to the motion for extension and separately filed a response in support. Dkt. 17. This Court granted the Universal Pictures' motion by minute order dated April 10, 2019.

Universal Pictures now moves to dismiss the Complaint as against it with prejudice.

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a plaintiff need not make minutely detailed factual allegations, he must provide enough information "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citations omitted). The facts alleged "must be enough to raise a right to relief above the speculative level," and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Id.* The court must take all of the complaint's well-pleaded factual allegations as true, but it need not accept "purely legal conclusions masquerading as factual allegations." *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995).

Although the Court holds pleadings by a *pro se* plaintiff such as Buchanan to "less stringent standards than formal pleadings by lawyers," the plaintiff still must "plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Gaines v. Dist. Of Columbia*, 961 F. Supp. 2d 218, 222 (D.D.C. 2013) (internal marks and citation omitted). "In other words, even a *pro se* plaintiff must meet his burden of stating a claim for relief." *Horsey v. U.S. Dep't of State*, 170 F. Supp. 3d 256, 263-64 (D.D.C. 2016) (Brown Jackson, J.).

To properly state a claim for copyright infringement, a plaintiff must plead facts sufficient to plausibly show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also, e.g.*, *Nichols*, 235 F. Supp. 3d at 293 ("To state a claim for copyright infringement, a plaintiff must allege facts showing that it owns a registered copyright and that the defendant has taken enough original elements protected by that copyright to create a substantially similar copy.").

A plaintiff must plead facts that would plausibly show both "actual copying" and "actionable copying" to meet the second element of a copyright infringement claim. *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002); *Prunté v. Universal Music Grp.* (*Prunté I*), 563 F. Supp. 2d 41, 43 (D.D.C. 2008). Showing actual copying requires facts indicating that the defendant had access to the plaintiff's allegedly infringed work – not simply a "bare possibility" of access but, at a minimum, a "reasonable possibility" that the defendant was exposed to the plaintiff's work. *Scott-Blanton v. Universal City Studios Prods. LLLP*, 539 F. Supp. 2d 191, 200 (D.D.C. 2008) (citation omitted), *aff'd*, 308 F. App'x 452 (D.C. Cir. 2009) (per curiam).

To show actionable copying, the plaintiff must identify the protectable, creative elements of his work and plausibly plead substantial similarity with the allegedly infringing work. *Sturdza*, 281 F.3d at 1295-96. Substantial similarity is demonstrated by comparing the two works as a whole to determine if an ordinary person would conclude the two works' aesthetic appeal is the same. *Atkins v. Fischer*, 331 F.3d 988, 993 (D.C. Cir. 2003).

I. **BUCHANAN FAILS TO PLAUSIBLY PLEAD ANY CLAIM AGAINST UNIVERSAL PICTURES**

   A. **Buchanan Has Not Pleaded Facts That Would Plausibly Show Universal Pictures Had Access to His Song**

The Complaint should be dismissed as against Universal Pictures because it does not contain any factual allegations indicating that anyone at Universal Pictures had any reasonable opportunity to hear the Song. Instead, the Complaint's allegations of access by Universal Pictures are the kind of "vague and conclusory" assertions that are insufficient as a matter of law to plausibly plead a cause of action. *Ahmed v. Riaz*, No. 1:14-CV-02207, 2014 WL 7463860, at *1 (D.D.C. Dec. 19, 2014).

Buchanan piles conclusory allegation atop conclusory allegation in a fruitless attempt to plausibly allege that Universal Pictures had access to the Song, and therefore could have infringed it. He alleges that his demo recording of the Song "was infringed by numerous writers, artist [sic] and music producers for the label Universal Music Group." Compl. at 15. Then he asserts:

> Due to these [sic] chain of events, Plaintiff[']s song was passed on and even accessed to [sic] Universal Pictures, whereby writers, producers and even directors fully exploited the Plaintiff[']s song, making it widely disseminated into a major motion picture industry franchise.

*Id.* (naming the *Fast & Furious* franchise as allegedly infringing the Song).

Buchanan pleads no facts showing how anyone at Universal Music Group had access to his Song, much less how someone at Universal Pictures purportedly obtained one or more copies of the Song. Although he vaguely alleges that the unnamed Atlanta attorney "shop[ped]" Buchanan's demo tapes to various record labels in New York in the late 1990s, *id.* ¶ 59, he does not identify any person involved in the purported chain of infringement stretching from the Atlanta lawyer to Universal Music to Universal Pictures. Such a thinly woven conspiracy theory

7

is not enough to plausibly plead a claim.  *Twombly*, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy," finding such allegations insufficient to avoid dismissal).

Buchanan also has not plausibly pleaded facts that would support an alternative theory of access: that the Song was widely disseminated such that it would be reasonable to infer that someone at Universal Pictures would have come across it.  *See, e.g.*, *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("In most cases, the evidence of widespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums.").  The Complaint, in fact, alleges the opposite – that Buchanan registered a copyright in the Song as one of a group of *unpublished* works in 1998 and did not release the recording for sale to the public until 2009, many years after the 2001 debut of *The Fast and The Furious*, the first film in the franchise.  Compl. ¶ 100.  The screenshot of the version of the Song available on You Tube that Buchanan attached to his Complaint shows it was posted in 2015 and had received only 38 views when the exhibit was created.  *Id.* Ex. 9 at 2.

In sum, there are no facts pleaded in the Complaint that, if true, would plausibly suggest that anyone at Universal Pictures, let alone anyone involved in creating the *Fast & Furious* movies, had ever heard (or heard of) the Song before the allegedly infringing movies were created.  Accordingly, Buchanan's claims against Universal Pictures fail because he has not plausibly pleaded the "actual copying" element of copyright infringement.

> **B.    Buchanan Does Not Identify Any Original Copyrighted Elements of His Work Purportedly Infringed By Universal Pictures**

The Complaint should also be dismissed as against Universal Pictures for the independent and equally dispositive reason that it does not contain any factual allegations indicating that the *Fast & Furious* movies copied any protectable component of the Song.  In other words,

Buchanan has no claim because he has not pleaded the necessary element of substantial similarity between the Song and some creative aspect of the *Fast & Furious* movies.

A plaintiff must set forth the unique, copyrightable elements of his work as the first step toward making a showing of substantial similarity or "actionable copying" of the plaintiff's work. *Sturdza*, 281 F.3d at 1295. A complaint must describe the aspects of the plaintiff's work "that display the stamp of the author's originality" because ideas or facts are not protected by copyright. *Id.* (quoting *Feist*, 499 U.S. at 350). Similarly falling outside copyright protection are the stock elements known as *scènes à faire*: those "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Id.* (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 616 (7th Cir. 1982)). Words, phrases and titles also are not copyrightable. *Prunté v. Universal Music Grp., Inc.* (*"Prunté II"*), 699 F. Supp. 2d 15, 27 (D.D.C. 2010), *aff'd*, 425 F. App'x 1 (D.C. Cir. Apr. 1, 2011) (per curiam).

Here, Buchanan fails to plead any copyrightable elements of the Song. This dooms his claim. Further, although Buchanan does not plead in the Complaint what creative aspects of his songs he believes were infringed, it is apparent from the exhibits attached to the Complaint that that he sees substantial similarity where no such similarity exists.

As a threshold matter, none of Buchanan's examples of alleged similarities even involves any *Fast & Furious* movie. This, in itself, is sufficient to dismiss his claim against Universal Pictures. Moreover, Buchanan's accusations against others of "stealing" from the Song demonstrate that he has no plausible infringement claim. The 2017 letter Buchanan sent to record labels asserts infringement by four hit songs, but the only examples Buchanan can muster – to the extent he identifies any similarities at all – are stock topics and phrases common to

untold numbers of narrative works.  *See generally* Compl. Ex. 10.  For example, Buchanan asserts that "Cruise" by the country music duo Florida Georgia Line "has the same concept of girls and cars as does the lyrics to I Gos Ta Roll."  *Id.* at 4.  The substantial similarities Buchanan sees between the Song and another hit by Florida Georgia Line, "This Is How We Roll," include the fact that both songs have "roll" in the title.  *Id.* at 5. Other aspects that Buchanan identifies as infringing are not at all similar:  For example, Buchanan asserts that the Song's line, "I put her legs in the air," was infringed by the phrase, "with our hands up," in "This Is How We Roll."  *Id.*  These are plainly not instances of actionable copying.

This point is illustrated by *Prunté II*.  There, as here, the plaintiff was an independent hip-hop singer/songwriter who alleged infringement of his work by a range of hit songs.  699 F. Supp. 2d at 19-20.  The court summarized the plaintiff's allegations of infringement:

> Mr. Prunté typically asserts that each allegedly infringing song has in common with one of his songs (1) use of a stock phrase, such as "that's what's up," and (2) a very broad theme or subject, such as sex and drugs.  The use of a cliché short phrase in a hip-hop song treating a very common subject cannot be said to create a distinctive musical effect, and so Mr. Prunté cannot . . . transform his combination of a few unprotectible elements into protected expression.

*Id.* at 25.  The court dismissed the plaintiff's claims because the "random assortment of similarities scattered throughout the works," were unprotectable elements, and did not "support a finding of substantial similarity where [the] works as a whole are not substantially similar."  *Id.* at 27 (quoting *Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38, 50 (D.D.C. 1999) (internal marks and citations omitted)).

So too, here.  Buchanan cannot point to any *protectable* elements in the Song that are substantially similar to any of the original creative elements in the eight-movie *Fast & Furious* franchise, both because he has not identified any protectable interest in his Song and because he has not identified any allegedly infringing elements of the films.  To be sure, the movies can be

10

said, like "Cruise" by Florida Georgia Line, to feature the same broad concept of girls and cars described in the Song. *See generally* http://www.fastandfurious.com/ (official *Fast & Furious* franchise website). But that concept is an archetypical *scène à faire*. If it was a copyrightable element of the Song, Buchanan would be guilty of infringing much of the preexisting canon of American popular music, from the Beach Boys' "Little GTO" to Tracy Chapman's "Fast Car," to say nothing of classic films such as *Rebel Without a Cause* and *Two-Lane Blacktop*.

As the Third Circuit has held: "where no reasonable juror could find substantial similarity, justice is best served by putting 'a swift end to meritless litigation.'" *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (citation omitted). The Complaint as against Universal Pictures should be dismissed because it does not show any similarity between the Song and the *Fast & Furious* movies.

### C. This Case Should Be Dismissed With Prejudice Because It Is Frivolous And Amending Or Repleading Would Be Futile

Buchanan's Complaint should be dismissed with prejudice as against Universal Pictures because it is frivolous on its face and therefore any attempt to replead would be futile.

The deference a court must provide to a *pro se* plaintiff such as Buchanan has its limits; plaintiffs proceeding without counsel still must "suggest a plausible scenario that shows the pleader is entitled to relief." *Jones v. Horne*, 634 F.3d 588, 595-96 (D.C. Cir. 2011) (internal marks and citations omitted). A court may dismiss with prejudice a frivolous *in forma pauperis* complaint at any time, even where, as here, the plaintiff has since paid the filing fee. 28 U.S.C.A. § 1915(e)(2)(B). An action is frivolous where it is based on "fanciful factual allegation[s]" involving "fantastic or delusional scenarios." *Neitzke v. Williams*, 490 U.S. 319, 325, 328 (1989); *see also, e.g.*, *Richardson v. Cash Money Records, Inc.*, No. CIV.A. 12-0475 (EGS), 2012 WL 6055573, at *1 (D.D.C. Dec. 5, 2012) (complaint may be dismissed as

11

frivolous where it lacks an "arguable basis in law and fact" (citation omitted)), *aff'd*, 550 F. App'x 9 (D.C. Cir. 2013) (per curiam).

Buchanan's Complaint should be dismissed with prejudice because it crosses the line from the merely unsupported to the facially frivolous. It rests on the fanciful premise that Universal Pictures' *Fast & Furious* movie franchise and approximately four dozen of the biggest hits in hip-hop, pop and country music over the last two decades were "stolen" from the Song – one of the cuts on several demo tapes an unnamed Atlanta lawyer shopped to unnamed executives at various record labels more than twenty years ago. Further, Buchanan's own allegations show this lawsuit is based on a delusional scenario: He asserts that he realized this purported infringement in a "sudden revelation beamed upon his (Plaintiff) mind," Compl. at 17, after he had "suffered a silent nervous breakdown," *id.* at 8. Similarly fantastical is Buchanan's characterization of the imagined wrongs against him as worse than the Holocaust, and his assertion he is entitled to damages in the outlandish amount of "$1 Quadrillion," which is approximately 50 times the gross domestic product of the United States last year. *See* Press Release, *U.S. Bureau of Economic Analysis, Gross Domestic Product, Fourth Quarter and Annual 2018 (Initial Estimate)* (Feb. 28, 2019), https://www.bea.gov/news/2019/initial-gross-domestic-product-4th-quarter-and-annual-2018 (reporting estimated 2018 gross domestic product as $20.5 trillion).

Allowing Buchanan to attempt to amend his complaint would not benefit the parties or the Court because repleading cannot transform his frivolous claims about the *Fast & Furious* franchise into legitimate litigation. Consequently, the Court should dismiss this action with prejudice as against Universal Pictures.

## CONCLUSION

For all of the foregoing reasons Defendant Universal Pictures respectfully requests that this Court dismiss all claims as against it with prejudice.

Dated: May 2, 2019

BALLARD SPAHR LLP

By: /s/Matthew E. Kelley

Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1112
F: (202) 661-2299

*Counsel for Defendant Universal Pictures*