## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | |
| MOREH J. BUCHANAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18-cv-3028 (KBJ) |
| ) | |
| SONY MUSIC ENTERTAINMENT, ) | |
| *et. al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

Pro se plaintiff Moreh J. Buchanan has filed the instant lawsuit against four

record companies and one movie studio under the Copyright Act, 17 U.S.C. § 501.  (*See*

Compl., ECF No. 1, at 14–17.)[1]  Buchanan alleges that he distributed four original

songs to Defendants Sony Music Entertainment, Warner Music Group Corp., UMG

Recordings, Inc., and Sony/ATV Music Publishing LLC (collectively, "the Record

Companies") between 1992 and 1997, in an effort to persuade them to produce his

music (*see id.* at 4–5), and that these companies then unlawfully appropriated his music

and lyrics, using them to create scores of hit songs that were released between 1993 and

2018 (*see id.* at 10–14).  Buchanan specifically alleges that the Record Companies

engaged in 56 individual acts of copyright infringement, and he further contends that

Defendant Universal Pictures derived the "plot, theme, story line, characters, cast,

scenes, etc. etc." of the *Fast and Furious* film franchise from a copyrighted song that he

---

[1] Page number citations to the documents that the parties have filed refer to those that the Court's
electronic case filing system automatically assigns.

sent to that company.  (Pl.'s Opp'n to Defs.' Mots. to Dismiss ("Pl.'s Opp'n to All

Defs."), ECF No. 22, at 6.)  Buchanan also alleges that the Record Companies were

negligent, and strictly liable, for failing to monitor their "writers, producers[,] and

artist[s]" and for not protecting Buchanan "from harm of copyright infringement."

(Compl. at 14–15.)

Before this Court at present are two motions to dismiss Buchanan's complaint

that the Record Companies and Universal Pictures have filed.  (*See* Defs. Record Cos.'

Mot. to Dismiss, ECF No. 19; Def. Universal Pictures's Mot. to Dismiss ("Def. UP's

Mot."), ECF No. 18.)  The Record Companies contend that Buchanan's complaint fails

to plead his claims of copyright infringement sufficiently under Federal Rule of Civil

Procedure 12(b)(6); that the Copyright Act's statute of limitations bars some of the

infringement claims; and that the Copyright Act preempts the complaint's negligence

and strict liability tort claim.  (*See* Defs. Record Cos.' Mem. in Support of Mot. to

Dismiss ("Defs. Record Cos.' Mem."), ECF No. 19-1, at 6–7.)  Universal Pictures

similarly argues that Buchanan has failed to plead facts that establish a plausible claim

of copyright infringement under Rule 12(b)(6).  (*See* Def. UP's Mot. at 1.)  In response,

Buchanan generally maintains that the allegations in his complaint are sufficient to

support his copyright infringement claims.  (*See* Pl.'s Opp'n to All Defs. at 2.)

For the reasons explained below, this Court concludes that Buchanan has failed

to state a claim for copyright infringement, because not all of the songs that he claims

were infringed have been registered with the U.S. Copyright Office, and he has not

sufficiently alleged that Defendants had access to his registered works or that there are

substantial similarities between protectable aspects of his registered works and most of

the infringing songs in his complaint.  The Court further finds that the tort claim in Buchanan's complaint must be dismissed as preempted by the Copyright Act. Accordingly, both Defendants' motions will be **GRANTED**.  A separate Order consistent with this Memorandum Opinion will follow.

## I.   BACKGROUND

### A.   Alleged Facts[2]

Plaintiff Moreh J. Buchanan is a "songwriter, music publisher, singer/rapper, artist . . . and composer[.]" (Compl. ¶ 3.)  In the 1990s, Buchanan allegedly wrote, produced, and recorded several original demonstration songs—colloquially referred to as "demos"—that he distributed to music-industry professionals in hopes of landing a record deal.  (Pl.'s Opp'n to All Defs. at 12.)  According to the complaint, Buchanan first traveled to Atlanta in 1994 and 1995 (*see* Compl. ¶¶ 40, 43) to present the demos to certain relatives of his who worked in the music industry (*see* Pl.'s Opp'n to All Defs. at 5; *see also* Compl. ¶¶ 20–23).  Buchanan's family members apparently consistently rebuffed his repeated attempts to pitch the demos in this fashion (*see* Compl. ¶¶ 24, 40–45), so Buchanan physically relocated to Atlanta (*see id.* ¶ 46), to "search for a record deal by sharing his music" (*id.* ¶ 50).  Once there, Buchanan allegedly not only passed demo tapes to producers and music executives personally (*see*

---

[2] Because "all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether a motion to dismiss should be granted[,]" *Muhammad v. F.D.I.C.*, 751 F. Supp. 2d 114, 119 (D.D.C. 2010), *aff'd*, 448 F. App'x 74 (D.C. Cir. 2012) (citations omitted), the facts recited herein are drawn from Buchanan's complaint and also the six briefs that he has submitted in opposition to Defendants' motions to dismiss (*see* Pl.'s Opp'n to All Defs.; Pl.'s Opp'n to Def. UP's Mot. to Dismiss ("Pl.'s Opp'n to Def. UP's Mot."), ECF No. 25; Pl.'s Exh. 11, ECF No. 26; Pl.'s Exh. 10 in Supp. of Second Aff. ("Pl.'s Registration Appl."), ECF No. 27; Pl.'s Reply in Support of Opp'n ("Pl.'s Surreply"), ECF No. 30; and Pl.'s Opp'n to Defs.' Surreply, ECF No. 33).

*id.* ¶ 52–53), he also worked with a lawyer, E. Earle Burke, who, in 1997, "shopped" Buchanan's demo tapes to "Motown, Columbia, Sony, and MCA/Universal Records" (Compl. ¶ 59; *see also* Pl.'s Opp'n to All Defs. at 5).  Burke allegedly told Buchanan that the record companies he approached were "very excited about [Buchanan's] looks, sound, and demo tape[,]" (Compl. ¶ 60), and further suggested that MCA or Motown was interested in contracting with Buchanan (*see id.* ¶ 61).

Around that same time, Buchanan purportedly came to believe that the rapper Will Smith had copied one of the demo songs in order to create the popular song "Gettin' Jiggy Wit It."  (*See id.* ¶¶ 64–71.)  Buchanan sought counsel from Burke, and Burke agreed to pursue the matter.  (*See id.* ¶¶ 67, 82–83.)  Ultimately, Burke failed to take legal action because, according to Buchanan, Burke "was bribed by Will Smith[.]" (*Id.* ¶ 101.)[3]  In late 2012, Buchanan began to notice *other* popular songs—songs "dating back as far as 1993"—that he believed "infringed on his . . . songs and music copyright."  (*Id.* at 17.)  The allegedly infringing works are songs that were marketed between 1993 to 2018 and include popular hits like "Single Ladies" by Beyoncé, "Shape of You" by Ed Sheeran, and "No Scrubs" by TLC.  (*See id.* at 9–15.)  In total, Buchanan's complaint identifies 56 songs that allegedly infringe on his copyrights. (*See id.*)[4]  In addition to the listed popular songs, Buchanan's complaint further alleges that

---

[3] In his consolidated opposition to Defendants' motions to dismiss, Buchanan clarified that he is not bringing a copyright infringement claim based on "Gettin' Jiggy Wit It" in the instant lawsuit.  (*See* Pl.'s Opp'n to All Defs. at 6.)

[4] In the briefs that he filed in opposition to Defendants' motions to dismiss, Buchanan names an additional five allegedly infringing songs.  (*See* Pl.'s Opp'n to All Defs. at 3; Pl.'s Opp'n to Surreply, at 3.)  However, only the alleged acts of infringement that appear in the complaint are cognizable claims in the instant lawsuit.  *See Budik v. Ashley*, 36 F. Supp. 3d 132, 144 (D.D.C. 2014), *aff'd sub nom. Budik v. United States*, No. 14-5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014) (holding in a case involving a pro se plaintiff that "[i]t is a well-established principle of law in this Circuit that a plaintiff may not amend her complaint by making new allegations in her opposition brief." (citation

the *Fast and Furious* film franchise lifted its "plot, theme, story line, characters, cast, scenes, etc. etc." from his song entitled "I Gos Ta Roll." (Pl.'s Opp'n to All Defs. at 6.)

Notably, Buchanan officially registered "I Gos Ta Roll" with the U.S. Copyright Office in April of 1998. (*See* Exh. 2 to Pl.'s Compl., ECF No. 1-1, at 2; Pl.'s Opp'n to All Defs., at 13; *see also* Defs. Record Cos.' Mem., at 12; Exh. A to Defs. Record Cos.' Mem., ECF No. 19-5, at 2.) However, none of the other demo songs that Buchanan points to as having been subsequently pilfered by the Record Companies—including "Krazy Bad," "Gangsta Bass," and "Zombie Beat"—were registered with the Copyright Office prior to the initiation of the instant lawsuit. (*See* Pl.'s Exh. 10 in Supp. of Second Aff. ("Pl.'s Registration Appl."), ECF No. 27, at 4.)

## B.    Procedural History

On December 17, 2018, Buchanan filed a pro se complaint in this Court, alleging "copyright infringement of his original demo song[s][.]" (Compl. ¶ 101.) Buchanan's complaint is not a model of clarity, but it appears to assail certain specified acts as copyright violations, each of which this Court construes as a separate infringement claim for the purpose of evaluating Defendants' motions to dismiss.[5] Buchanan's complaint also appears to allege that the Record Companies have committed negligence,

---

omitted)).

[5] As previously explained, the complaint alleges that the Record Companies unlawfully used Buchanan's four demo songs to create 56 infringing songs, each of which is specifically listed in the pleading. (*See id.* at 9–14.) The complaint further maintains that Universal Pictures copied the fundamental ideas from Buchanan's "I Gos Ta Roll" song and relied on those ideas to create the plot, characters, and theme of the *Fast and Furious* film franchise. (*See* Pl.'s Opp'n to Def. UP's Mot., ECF No. 25, at 2; *see also* Pl.'s Opp'n to All Defs. at 6.) Thus, the complaint alleges 57 separate acts of copyright infringement.

and are strictly liable, for "failing to protect Plaintiff from harm of copyright infringement." (Compl. at 14.)  As relief, Buchanan seeks damages totaling "$1 Quadrillion." (Compl. at 17.)

On May 6, 2019, the Record Companies moved to dismiss Buchanan's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Defs. Record Cos.' Mem. at 10.)  The Record Companies point out that Buchanan does not have a valid copyright for three of the four demo songs (*see id.* at 10–12), and they further insist that his complaint has "not plausibly pled" that the Record Companies had access to Buchanan's works in order to copy them (*id.* at 13).  The Record Companies also argue that Buchanan's pleading fails to state a claim upon which relief can be granted, because he does not identify similarities between most of his works and the allegedly infringing songs, and the few similarities that he does identify are insufficient to support his claims (*id.* at 15–22).  Finally, the Record Companies point to the Copyright Act's statute of limitations, which they maintain bars many of Buchanan's infringement claims, and they assert further that the Copyright Act preempts his negligence/strict liability claim.  (*See id.* at 22–25.)

Universal Pictures filed its Rule 12(b)(6) motion to dismiss on May 2, 2019. (*See* Mem. of P. & A. in Supp. of Def. Universal Pictures's Mot. to Dismiss ("Def. UP's Mem."), ECF No. 18-1.)  The primary thrust of Universal Pictures's argument is that Buchanan has not "plausibly explain[ed] how Universal Pictures gained access" to "I Gos Ta Roll" or any of his other demo songs, nor has he "set forth what copyrightable elements of his works" Universal Pictures allegedly copied.  (*Id.* at 5.)

Buchanan filed a consolidated opposition to both Defendants' motions to dismiss

on June 7, 2019 (*see* Pl.'s Opp'n to All Defs., ECF No. 22), and flurry of responsive

briefing followed.  Specifically, the Record Companies filed a reply brief on June 17,

2019 (*see* Defs. Record Cos.' Reply in Supp. of Mot. to Dismiss, ECF No. 23), and

Universal Pictures filed its reply brief on that same day (*see* Reply Mem. in Supp. of

Def. Universal Pictures's Mot. to Dismiss, ECF No. 24).  Buchanan then filed several

additional documents in opposition to the Defendants' motions to dismiss (*see* Pl.'s

Opp'n to Def. UP's Mot., ECF No. 25; Pl.'s Exh. 11 in Supp. of 2nd Aff., ECF No. 26;

Pl.'s Registration Appl., ECF No. 27), and the Record Companies filed a surreply on

August 7, 2019 (*see* Defs. Record Cos.' Surreply, ECF No. 34).  Finally, Buchanan filed

an initial surreply on August 14, 2019 (*see* Pl.'s Reply in Supp. of Opp'n to Not

Dismiss ("Pl.'s Surreply"), ECF No. 30), which was followed by a final surreply on

August 23, 2019 (*see* Pl.'s Opp'n to Defs.' Surreply, ECF No. 33).

## II.  MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to

dismiss a complaint against it on the grounds that it "fail[s] to state a claim upon which

relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) tests the sufficiency of

a plaintiff's complaint, *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017), and

it is well established that, to withstand a Rule 12(b)(6) motion, the plaintiff must allege

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

its face[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and

citation omitted).  When evaluating a motion's allegation that the complaint must be

dismissed for failure to state a cognizable claim, the court must "accept the plaintiff's

factual allegations as true and construe the complaint liberally, granting plaintiff the

benefit of inferences that can reasonably be derived from the facts alleged." *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018) (internal quotation marks, alterations, and citation omitted).

It is also clear that, as a general matter, pleadings that are submitted by pro se plaintiffs should be "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also id.* ("A document filed *pro se* is to be liberally construed[.]" (internal quotation marks and citation omitted)).) However, "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure[.]" *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009). Thus, the court need not "accept legal conclusions cast as factual allegations[,]" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012), and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not pass muster under Rule 12(b)(6), *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (internal quotation marks, alterations, and citation omitted).

## III.   ANALYSIS

As previously mentioned, Defendants seek dismissal of the bulk of Buchanan's complaint on the grounds that Buchanan has failed to plead his copyright infringement claims sufficiently, and the Record Companies further maintain that some of Buchanan's claims are either barred by the applicable statute of limitations or preempted by the Copyright Act.  (*See* Defs. Record Cos.' Mem. at 10–24; Def. UP's Mem. at 11–15.)  As explained below, this Court largely agrees with Defendants' contentions.  That is, to the extent that some of Buchanan's claims pertain to certain demo songs that he did not register with the Copyright Office, no claim pertaining to

infringement of those works can be sustained as a matter of law.  And Buchanan has also failed to identify a chain of events that supports a plausible inference that Defendants actually had access to the one demo song he registered, nor has he otherwise sufficiently identified protectible and infringed elements of that registered work.  Thus, none of Buchanan's copyright claims can proceed.  Furthermore, because the Copyright Act preempts a tort liability claim that pertains to an alleged failure of the defendant to shield registered creative works from alleged unlawful appropriation, Buchanan's negligence and strict liability claim must also be dismissed.

### A.  Buchanan's Complaint Fails To State Any Valid Copyright Infringement Claims

#### 1.  <u>Federal Copyright Law Conveys Enforceable Rights To Owners Of Creative Works, But Only Under Certain Specified Circumstances</u>

Under Title 17 of the United States Code, the owner of a creative work that is subject to copyright protection generally has several exclusive rights with respect to his creation, including the right to "reproduce the copyrighted work[,]" to "prepare derivative works[,]" to "distribute copies[,]" to "perform the copyrighted work publicly[,]" and to "display the copyrighted work publicly[.]"  17 U.S.C. § 106.  Moreover, and significantly for present purposes, if the owner of a work has sought and received "preregistration or registration of the copyright claim . . . in accordance with [Title 17][,]" 17 U.S.C. § 411, then he also has "an exclusive right . . . to institute an action for any infringement" of his copyright, 17 U.S.C. § 501.

According to the D.C. Circuit, to state a claim for copyright infringement, a plaintiff must allege facts that, if true, would "prove both [1] ownership of a valid copyright and [2] that the defendant copied original or 'protectable' aspects of the copyrighted work."  *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir.

2002) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348, 361 (1991)).  The initial author of a protectible work typically qualifies as the "owner" of the copyright, *see* 17 U.S.C. § 201, and such author "gains 'exclusive rights' in her work immediately upon the work's creation." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (citation omitted); *see also* 17 U.S.C § 408 ("[R]egistration is not a condition of copyright protection.").  In order for an author to seek to enforce copyright protection of a work in court, however, the work must ordinarily be registered with the Copyright Office; indeed, section 411(a) of Title 17 specifically states that "no civil action for infringement of the copyright . . . shall be instituted until preregistration or registration of the copyright claim has been made[.]" 17 U.S.C. § 411(a); *see also Fourth Estate*, 139 S. Ct. at 887 (noting that the requirement that a song be registered "is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights"); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157–58 (2010) (explaining that copyright registration is "a condition . . . that plaintiffs ordinarily must satisfy before filing [a copyright] infringement claim").  It is also clear beyond cavil that a timely certificate of registration serves as prima facie evidence of a valid copyright. *See* 17 U.S.C. § 410(c); *see also Stenograph L.L.C. v. Bossard Assocs., Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1998) (explaining that "certificates of registration . . . constitute *prima facie* evidence of the validity of the copyright").

With respect to the copying element of a copyright infringement claim, in the absence of direct evidence of copying, a plaintiff must allege "(1) that defendants had access to the copyrighted work, and (2) the substantial similarity between the

protectible material in plaintiff's and defendants' works." *Prunte v. Universal Music Grp.*, 484 F. Supp. 2d 32, 40–41 (D.D.C. 2007).   Access generally means that an infringer had a "reasonable opportunity to hear the plaintiff's work" and, thus, had "the opportunity to copy"; however, "access may not be inferred through mere speculation or conjecture." *Jones v. Blige*, 558 F.3d 485, 491 (6th Cir. 2009) (internal quotation marks and citations omitted).   Moreover, the second element—the substantial similarity inquiry—proceeds in two distinct steps.   *See Sturdza*, 281 F.3d at 1295.   "The first step requires identifying which aspects of the artist's work, if any, are protectible by copyright[,]" *id.*, while the second step requires comparing the works to determine "whether the infringing work is 'substantially similar' to protectable elements of the artist's work[,]" *id.* at 1296 (citation omitted).   Protectible aspects of an artist's work are those "that display the stamp of the author's originality"; thus, facts, ideas, and "incidents, characters, and setting which are . . . standard[] in the treatment of a given topic" are all considered unprotectible.   *Id.* at 1295–96 (internal quotation marks and citations omitted).

Applied here, these legal standards require that, in order to state a valid claim for copyright infringement, Buchanan has to allege that Defendants had access to one or more of his registered (validly copyrighted) demo songs, and that Defendants' works are substantially similar to protectible material in Buchanan's copyrighted works. Buchanan's complaint falls far short of making sufficient allegations with respect to these critical elements of a valid copyright claim, for the reasons explained below.

       2.     <u>Some Of The Copyright Infringement Claims In Buchanan's Complaint Are Based On Unregistered Recordings</u>

Buchanan's various filings make clear that only *one* of the four demo songs upon which his copyright infringement claims are based was registered with the U.S. Copyright Office at the relevant time.  Buchanan alleges that he registered the song "I Gos Ta Roll" prior to the initiation of the instant lawsuit (*see* Compl. ¶ 100; Pl.'s Opp'n to All Defs. at 13 ¶ 85), and at least for the purpose of their motion to dismiss, Defendants appear to accept that Buchanan registered that song and thus had ownership of a valid copyright in "I Gos Ta Roll" at the time Buchanan filed his complaint (*see* Defs. Record Cos.' Mem. at 13; Exh. A to Defs. Record Cos.' Mem. at 2).  Buchanan proceeds to allege that 46 songs that the Record Companies produced infringe on his copyright for "I Gos Ta Roll," including "No Scrubs" by TLC, "Shape of You" by Ed Sheeran, and "I Want It That Way" by The Backstreet Boys.  (*See* Compl. at 9–14.) Buchanan further alleges that the *Fast and Furious* film franchise infringes on "I Gos Ta Roll."  (*See id.* at 15.)

The remaining nine songs that the complaint assails as infringing works—"Born to Roll" by Masta Ace, "Single Ladies" by Beyoncé, "Rap God" by Eminem, "6 Foot 7 Foot" by Lil Wayne, "Rockstar" by Post Malone, "Started From the Bottom" by Drake, "Yes Yes Y'all" by Will Smith, "Country Grammar" by Nelly, "Hell Yeah" by Ginuane, and "Roving Gangster" by Kid Rock—purportedly infringe upon three *other* demo songs that Buchanan recorded: "Krazy Bad," "Gangsta Bass," and "Zombie Beat."  (*See id.* at 9–14.)  But Buchanan does not allege that he submitted any registration application with respect to these three works prior to the initiation of this lawsuit, and the fact that he sought registration for them *after* Defendants filed their motions to dismiss strongly suggests that these songs were not previously registered.  (*See* Pl.'s

Registration Appl. at 4 (explaining that the registration application fee for the three

songs was submitted on July 3, 2019 and that the songs were not previously registered

"because [Buchanan] did not think [the songs] would be infringed").)

The lack of any allegation regarding pre-suit registration with respect to those

three songs compels the conclusion that the nine infringement claims that relate to

Buchanan's unregistered works must be dismissed for failure to state a claim on which

relief can be granted.  In other words, Buchanan did not register the three allegedly

copied works before pursuing a copyright infringement lawsuit based on those songs,

and as a result, he cannot maintain copyright infringement claims with respect to any

new songs that allegedly infringe his ownership rights related to those unregistered

works.  *See Fourth Estate*, 139 S. Ct. at 887; *see also, e.g., Newborn v. Yahoo!, Inc.*,

391 F. Supp. 2d 181, 188 (D.D.C. 2005) (finding that where "there [is] no current

copyright for this document, it cannot form the basis for a copyright infringement

claim").

> 3.   Buchanan's Complaint Does Not Contain Sufficient Facts To Give Rise To A Reasonable Possibility That Defendants Had Access To His Registered Work

The copyright claims that pertain to the one registered demo song that appears in

Buchanan's complaint ("I Gos Ta Roll") fail because, notwithstanding the copyright

registration, Buchanan has not plausibly alleged that Defendants had access to this

song.  To establish that a defendant had access to a plaintiff's work for the purpose of

stating a cognizable copyright claim under federal law, the plaintiff must allege, and

ultimately prove, circumstances that suggest "a reasonable possibility, not merely a

bare possibility, that an alleged infringer had the chance to view the protected work."

*Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) (internal quotation marks and

citation omitted); *see also Cottrill v. Spears*, 87 F. App'x 803, 806 (3d Cir. 2004), *as amended on reh'g* (June 2, 2004); *Towler v. Sayles*, 76 F.3d 579, 582 (4th Cir. 1996); *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 942 (8th Cir. 1992). A plaintiff can make this showing in one of two ways: "(1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work . . . or (2) the plaintiff's work has been widely disseminated." *Olson v. Tenney*, 466 F. Supp. 2d 1230, 1235 (D. Or. 2006) (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000)).

Here, Buchanan says only that his lawyer, E. Earle Burke, distributed "cassette tapes" with his songs to "Motown, Columbia, Sony, and MCA/Universal" (Compl. ¶¶ 58–59), and that these tapes "included 4 *new* songs that [Buchanan] wrote and recorded in summer 1997" (*id.* ¶ 58 (emphasis added)). Buchanan does not state that this distribution included "I Gos Ta Roll[,]" and such is unlikely, given Buchanan's allegation that he had recorded that particular song more than three years prior, in April of 1994. (*See id.* ¶ 40.) Moreover, and importantly, while Buchanan generally alleges that he mailed "copies of 'I Gos Ta Roll' to many record labels[,]" he does not allege that he mailed the song to any of the named Defendants specifically. (Pl.'s Opp'n to All Defs. at 11 ¶ 43).[6]

Buchanan has also failed to allege that "I Gos Ta Roll" was "so widely disseminated that the defendant can be presumed to have . . . heard it." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1100 (7th Cir. 2017). "[W]idespread

---

[6] Buchanan's assertion that he handed his demo songs to music executives at various record labels, such as Interscope, Mercury, Jive, and Epic Records (*see* Compl. ¶¶ 50, 52), is not sufficient because he has not alleged any connection between those record labels and the named Defendants, nor has he identified which demo songs he provided to these executives.

dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." *Loomis*, 836 F.3d at 997. And far from alleging that "I Gos Ta Roll" was widely disseminated prior to Defendants' alleged acts of infringement, Buchanan asserts that he published the song *for the first time* when he released it digitally on October 26, 2009. (*See* Compl. ¶ 100.) Buchanan's pleading also lacks any allegations with respect to the scope of that song's dissemination after it was published online; that is, Buchanan does not allege that a mass of people either purchased "I Gos Ta Roll" or listened to it. Yet, widespread dissemination of the type that gives rise to an inference of access in support of a copyright infringement claim generally requires a significant showing of ubiquity. *See, e.g.*, *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1144 (9th Cir. 2009) (holding that the sale of 2,000 t-shirts per year was not sufficient to show wide dissemination); *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (holding that sale of 17,000 video copies over a thirteen-year period could not be considered widely disseminated); *Jason v. Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981), *aff'd* 698 F.2d 966 (9th Cir. 1982) (holding book sales of approximately 2,000 copies did not create more than a bare possibility of access). Indeed, it is quite well established that "the mere fact that [Buchanan's] work was posted on the internet . . . is insufficient by itself to demonstrate wide dissemination." *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008); *see also Meynart-Hanzel v. Turner Broad. Sys.*, No. 17 C 6308, 2018 WL 4467147, at *6 (N.D. Ill. Sept. 18, 2018) (explaining that sufficiently pleading wide dissemination requires "facts concerning the

15

alleged breadth of that distribution (*e.g.*, the number of views, subscribers, traffic, etc.)").

With respect to Buchanan's allegation that Burke provided a demo of "I Gos Ta Roll" to UMG Recordings ("UMG"), and that Universal Pictures got access to the song through that distribution (*see* Compl. at 15), Buchanan has suggested a particular mode of transmission of this work to those Defendants, but his access allegations are insufficient nonetheless because there must be a "reasonable possibility" that allegedly infringing actors within UMG and Universal Pictures had the opportunity to copy his song, *Moore*, 972 F.2d at 942, and there is nothing in Buchanan's pleadings upon which to base any such inference.  For instance, where a plaintiff has alleged access through a third-party intermediary, "[a] court may infer that the alleged infringer had a reasonable possibility of access if the author sent the copyrighted work to a third party intermediary who has a *close relationship* with the infringer."  *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996) (emphasis added); *see also id.* (explaining that a close relationship can be shown where the intermediary "supervises or works in the same department as the infringer or contributes creative ideas to him").  But Buchanan has not made any factual allegations with respect to Burke's relationship with any of the Defendants, much less *to whom* Burke provided the demo tape at UMG and/or *how* the song was then transferred to the allegedly infringing writers and producers within UMG or at Universal Pictures.  *See Schkeiban v. Cameron*, No. CV 12-0636-R (MANX), 2012 WL 12895721, at *2 (C.D. Cal. July 20, 2012) (explaining that plaintiff has not pleaded "facts showing a chain of events from [intermediary] to [alleged infringer]" or shown that "their relationship is sufficiently strong to raise a reasonable possibility of

access"); *cf. Peters v. West*, 692 F.3d 629, 634 (7th Cir. 2012) (finding access sufficiently pled where plaintiff provided song to intermediary who was alleged to have had a close relationship with creator of infringing work).

Nor has Buchanan identified any of the writers and music producers who created the allegedly infringing works, or alleged that any of these infringers was employed by, or otherwise had a relationship with, UMG or Universal Pictures such that they could possibly have received a copy of "I Gos Ta Roll" after Burke purportedly provided it to UMG. *See Griffin v. Peele*, No. EDCV 17-01153 JGB, 2018 WL 5117555, at *5 (C.D. Cal. Jan. 18, 2018) (finding plaintiff's chain of events "too speculative" where plaintiff did not allege that the infringing work was actually provided to alleged infringer). Buchanan identifies the *recording artists* associated with each allegedly infringing work, but he does not allege that these artists were responsible for writing or producing the infringing works, nor does he allege any facts from which the Court could infer that the recording artists had access to his work. *See Lyles v. Capital-EMI Music Inc.*, No. 2:12-CV-00751, 2013 WL 6000991, at *4 (S.D. Ohio Nov. 12, 2013) (finding access insufficiently pled where "there are no facts alleged that would allow any reasonable inference that the record companies to which Plaintiff sent his songs had any relationship with [alleged infringing artist]").  And the similarly bald contention that "I Gos Ta Roll" was "passed on" to Universal Pictures from UMG (Compl. at 15) is likewise not enough. *Cf. Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1064 (C.D. Cal. 2017) (finding access sufficiently pled where plaintiff alleged that she submitted a script to a script-writing contest, the contest's director had a close relationship with the creator of the infringing work, and creator of infringing work

received the script from the contest director).  In short, Buchanan's allegations do not

allege facts that make the allegedly infringing producers' access to "I Gos Ta Roll" a

"reasonable possibility"; therefore, Buchanan has failed to provide the plausible

allegation of access that copyright law requires.  *See Towler*, 76 F.3d at 583 ("The

'tortious chain of hypothetical transmittals' that [plaintiff] attempts to forge is

insufficient to infer access." (quoting *Meta-Film Associates, Inc. v. MCA, Inc.*, 586 F.

Supp. 1346, 1355 (C.D. Cal. 1984))).

    4.    <u>Buchanan's Complaint Fails To Allege Facts That Support A Plausible Inference Of Substantial Similarity</u>

Finally, it is clear to this Court that, even if Buchanan has adequately pled that

Defendants had access to his registered song "I Gos Ta Roll," Buchanan has not

identified protectible elements of that song, and has failed to allege a substantial

similarity between those protectible elements and the allegedly infringing works.

Instead, to support the vast majority of his copyright infringement claims, Buchanan

merely asserts that the infringing work "steals from" his song.  Courts have consistently

held that the bare assertion that a work "steals from" a plaintiff's work is insufficient to

state a claim of copyright infringement.  *See, e.g.*, *Evans v. McCoy-Harris*, No. CV

178-345-DMG, 2019 WL 4284504, at *3 (C.D. Cal. May 9, 2019) (granting the

defendant's motion to dismiss where the "[p]laintiff does not address the substantial

similarities, if any, between [one of her works] and [the defendant's work]"); *Ritani,*

*LLC v. Aghjayan*, 880 F. Supp. 2d 425, 442 (S.D.N.Y. 2012) (noting that "failure to

plead facts regarding how the [works] are 'substantially similar,' including identifying

the protectable elements of the works as part of its claim, will result in the dismissal of

the copyright claim"); *Zendel v. ABC Video Prods.*, No. CV 10-2889-VBF(EX), 2010

18

WL 11549713, at *1 (C.D. Cal. Nov. 22, 2010) (granting motion to dismiss where plaintiff "fail[ed] to identify or describe any of the alleged similarities with reasonable particularity"); *Phillips v. Murdock*, 543 F. Supp. 2d 1219, 1226 (D. Haw. 2008) (granting dismissal where "[t]he Complaint does not identify any specific text in [plaintiff's] work that is copied in [defendant's] publications"). Forty-three of Buchanan's infringement claims simply maintain that the listed song "steals from" "I Gos Ta Roll," with nothing more, and therefore, must be dismissed for failure to state a claim upon which relief can be granted. (*See* Compl. at 9–14.)

With respect to Buchanan's claim that Universal Pictures infringed on his song "I Gos Ta Roll" in order to create the "plot, theme, story line, characters, cast, scenes, etc. etc." of the *Fast and Furious* films (Pl.'s Opp'n to All Defs. at 6), Buchanan only identifies one element of "I Gos Ta Roll" that the motion picture company allegedly copied—he alleges that "I Gos Ta Roll" includes the lyric "I'm on the freeway zooming fast[,]" (Pl.'s Opp'n to Def. UP's Mot. at 3) and maintains that there are "scenes within the movie that depict the actors . . . zooming fast and furious on the freeway and other road scenes" (*id.*). Even assuming *arguendo* that the creator of the film franchise listened to Buchanan's song, the notion of fast freeway movement that that one lyric embodies is not a protectable element of the song, because "no author may copyright facts or ideas." *Feist Publ'ns*, 499 U.S. at 350 (internal quotation marks and citation omitted). Only "those aspects of the work—termed 'expression'—that display the stamp of the author's originality" receive copyright protection. *Id.* (internal quotation marks and citation omitted). Therefore, just as the idea "of a police car chase in an action movie is not copyrightable[,]" the mere idea of cars speeding down a highway is

not copyrightable. *Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 23 (D.D.C. 2010), *aff'd*, 425 F. App'x 1 (D.C. Cir. 2011).  And because Buchanan has "failed to identify any [] *protected* elements of ["I Gos Ta Roll"] upon which [Universal Pictures] infringed, [Buchanan] has failed to state a claim" for copyright infringement against Universal Pictures.  *Gaines v. D.C.*, 961 F. Supp. 2d 218, 222 (D.D.C. 2013) (emphasis added); *cf. Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 296 (D.D.C. 2017) (finding that plaintiffs had "adequately alleged copying of original elements with respect to the musical composition" where plaintiffs alleged that the defendant "copied a 30-second portion of the musical composition and made no alterations to the melody or tone of portion of the musical composition").

Buchanan has managed to identify certain other protectible elements of "I Gos Ta Roll" that he claims are substantially similar to three allegedly infringing songs of the Record Companies—"This is How We Roll" and "Cruise," both by the band Florida Georgia Line, and "Shake Ya Tailfeather" by the rapper Nelly.  (*See* Exh. 10 to Compl., ECF No. 1-1, at 22–23.)  However, neither "I Gos Ta Roll" nor any of these songs is in the record, and all of the circuit courts that have addressed substantial similarity at the motion to dismiss stage agree that a district court may only decide whether works are substantially similar this early in the litigation if (1) both the copyrighted and allegedly infringing works are in the record and (2) "no trier of fact could rationally determine the [works] to be substantially similar." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1175 (2019)(internal quotation and citation omitted); *see* 3 William F. Patry, Patry on Copyright § 9:86.50 (2020) (citing published opinions from the Second, Third, Seventh, Eighth, Ninth, and Tenth Circuits finding same).

Ordinarily, then, this Court would permit those claims to proceed on the ground that it is not in a position to evaluate Defendants' dismissal argument with respect to those three alleged acts of infringement.  But given the lack of sufficient allegations concerning access or any allegation that the works are so strikingly similar so as to "preclude the possibility of independent creation[,]" *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 56 (2d Cir. 2003), Defendants have already established that these claims, too, must be dismissed.  (*See supra* Part III.A.3.)

### B.   The Copyright Act Preempts Buchanan's Negligence And Strict Liability Claim

In addition to asserting that Defendants infringed his rights under the Copyright Act, Buchanan also maintains that the Record Companies are negligent and strictly liable because they "failed to perform" their duty to "protect [him] from harm of copyright infringement."  (Compl. at 14–15.)  But section 301 of the Copyright Act is crystal clear that the federal statute is the sole vehicle for recovery of damages due to an alleged theft of a plaintiff's creative work: it plainly provides that "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . *are governed exclusively by this title*[,]" and thus, "no person is entitled to any such right or equivalent right . . . *under the common law or statutes of any State*."  17 U.S.C. § 301(a) (emphasis added).  The D.C. Circuit has further explained that this broad state-law preemption provision was intended to "'enhanc[e] predictability and certainty of copyright ownership,' by establishing a 'uniform method for protecting and enforcing certain rights in intellectual property[.]'" *Sturdza*, 281 F.3d at 1303 (first quoting *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989); then quoting *Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995)).  Thus, no

21

common law claims concerning infringement can be maintained where (1) "the
copyrighted work [is] the type of work protected by copyright law"; and (2) "the state
law right [is] equivalent to a right protected by the Copyright Act." *Id.* at 1304
(citation omitted). As relevant here, "musical works" are explicitly protected in the
Copyright Act, 17 U.S.C. § 102, so the first preemption prong is satisfied in the instant
case. Thus, the only remaining question is whether the tort claim that Buchanan brings
here is "equivalent to a right protected by the Copyright Act." *Sturdza*, 281 F.3d at
1304.

A right arising under state law is equivalent to one of the "'exclusive rights
within the general scope of copyright' where the 'state law may be abridged by an act
which, in and of itself, would infringe one of [the Copyright Act's] exclusive rights."
*Id.* at 1304 (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195,
200 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985)). Thus, this Court
must determine whether there is an "extra element" of the state law claim that "changes
the nature of the action so that it is qualitatively different from a copyright infringement
claim[,]" and in order to do so, it looks to "both the elements of the state law cause of
action and the way the plaintiff has actually pled that cause of action." *Id.* (quoting
*Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001)). Under the laws of
the District of Columbia, the elements of a claim of negligence are "(1) that the
defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the
plaintiff that was proximately caused by the breach." *Poola v. Howard Univ.*, 147 A.3d
267, 289 (D.C. 2016) (internal quotation marks and citation omitted). And in his
complaint, Buchanan alleges that the Record Companies are negligent and strictly liable

because they "failed to monitor their several numerous writers, producers and artist[s]"
and thereby "failed to protect [Buchanan] from the harm of copyright infringement[,]
. . . failed to maintain and uphold a social and fiduciary responsibility[,] . . . [and]
failed to perform these duties in a safe and effective manner leading to the injuries
sustained by [Buchanan]." (Compl. at 14–15.)  Buchanan's negligence and strict
liability claim thus suggests that the Record Companies owed him a duty to prevent
their employees from creating infringing works, and that they breached the duty by
creating infringing works, thereby injuring him.

This Court finds that such a claim is not "qualitatively different" from a claim of
infringement under the Copyright Act, because the alleged breach of duty "rest[s]
on [defendant's] unauthorized copying—an act which in and of itself would infringe on
one of th[e] exclusive rights protected by the Copyright Act." *Sturdza*, 281 F.3d at
1305 (internal quotation marks and citation omitted); *see also id.* (finding that a state-
law claim for interference with a contract is not preempted where the alleged infringer
caused cancellation of a contract by conduct *other than* the infringing conduct).
Moreover, copyright infringement is a strict liability tort, *see* 6 Patry on Copyright
§ 21:38, and there is no "extra element" in a claim characterized as a strict liability
negligence claim rather than a copyright infringement claim, *see Dielsi v. Falk*, 916 F.
Supp. 985, 992 (C.D. Cal. 1996) ("[R]echaracterization of the claim as one of
'negligence' does not add a legally cognizable additional element because a general
claim for copyright infringement is fundamentally one founded on strict liability.").
Consequently, the common law negligence and strict liability claim that Buchanan
asserts in his complaint is the functional equivalent of the no-infringement right that the

Copyright Act protects such that Buchanan's tort claim is preempted and must be dismissed.

## IV.   CONCLUSION

For the reasons explained herein, this Court finds both that Buchanan has not stated any claims for copyright infringement against any of the Defendants, and that Buchanan's common-law tort claims cannot proceed because they are preempted. Therefore, as set forth in a forthcoming order, Defendants' motions to dismiss are **GRANTED**.

DATE:  May 26, 2020                            *Ketanji Brown Jackson*
                                               KETANJI BROWN JACKSON
                                               United States District Judge